IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLAUSTECH, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE, INC.,<br><br>    Defendant.<br>_____/ | No. C 10-05899 JSW<br><br>**ORDER RE TENTATIVE RULINGS AND QUESTIONS RE MARKMAN HEARING** |

      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON APRIL 28, 2016, AT 10:00 a.m.:

      The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

      The parties shall each have approximately 60 minutes to present their respective arguments on claim construction. The Court provides its tentative constructions of the disputed

terms of United States Patent No. 6,128,651 ("the '651 Patent") entitled "Internet Advertising with Controlled and Timed Display of Ad Content from Centralized System Controller."

**A.     "Website"**

The term "website" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "website" should be given its plain and ordinary meaning and must be construed to mean "a place on the World Wide Web that contains information through which a user can navigate." (KlausTech's Opening Brief at 7.) Defendant, on the other hand, argues that the term must be construed to mean "a client website (i.e. HTML document), from the client webserver, that is indexed by general search sites and contains code for the retrieval of a non-scrolling ad frame from the central controller." (*Id.*)

The key dispute between the parties is whether it is permissible for Defendant to import the specifications of the website being from a client server, that it can only be an indexed HTML document, and that the claimed website must contain code for retrieval of a non-scrolling ad frame.

(1)     Defendant contends that the patent clearly indicates the website is the client website and without this limitation added to the construction, the jury would be confused. Also, Defendant contends that otherwise, KlausTech could argue that "an ad is the claimed website." (*See* AdMob's Opposition at 6.) Does KlausTech intend to argue that an ad is the claimed website?

(2)     The limitation also indicates that it could, in certain iterations, include "ad copy in the website." ('651 Patent at 1:25-31.) Can the Court justify importing the three limitations Defendant suggest into its construction by stating the limitations on the term website is required to achieve the patent's purpose? *See E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003).

(3)     Also, HTML is only mentioned in the specifications and the specifications address implementations that use language other than HTML. ('651 Patent at 3:45-47; 6:30-31.) Defendant advocates importing the limitation of the fact that "the non-scrolling ad frame

2

never appears at the website" from the summary of invention section of the patent. *See Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1346-51 (Fed. Cir. 2004).

(4) The generic term "website" has been construed to mean "a location on the World Wide Web" or "one or more related web pages at a location on the World Wide Web." *See ACTV, Inc. v. Walt Disney Co.*, 204 F. Supp. 2d 650, 654 (S.D.N.Y. 2002); *VirnetX, Inc. v. Microsoft Corp.*, 2009 WL 2370727, at *9 (E.D. Tex. July 30, 2009). In addition, although the specifications mention all three of Defendant's suggested limitations, there is no support for their importation into the construction of the plain term "website."

The Court **tentatively** adopts the following construction: "one or more related web pages at a location on the World Wide Web."

B. **"Non-Scrolling Ad Frame"**

The term "non-scrolling ad frame" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "non-scrolling ad frame" should be given its plain and ordinary meaning and must be construed to mean "a frame which displays an ad and does not scroll (when the user scrolls)." (KlausTech's Opening Brief at 9; Reply at 5.) Defendant, on the other hand, argues that the term must be construed to mean "an HTML frame element that is used to display ad content and is constantly located with regard to the viewed screen of the browser." (*Id.*)

The key dispute between the parties is the addition of two elements: (1) the non-scrolling ad frame is used to display ad content and constantly located with regard to the viewed screen of the browser, and (2) the non-scrolling ad frame is an HTML frame element.

(1) Does the term non-scrolling mean constantly located, in which case it is redundant, and why is that not clear from the term itself?

(2) Defendant seeks to import the same limitation of HTML and relies on extrinsic evidence to support its position. (*See* AdMob's Opposition at 11.) On what basis is this permitted?

3

In previous briefing, KlausTech agreed that the non-scrolling ad frame could be considered a frame "that remained fixed in a constant location on the screen." (*See* Response re Motion for Judgment on the Pleadings, Docket no. 136 at 4:17-18.)

The Court **tentatively** adopts the following construction: "a frame element which displays an ad that remains fixed in a constant location on the screen."

### C. "Transmitting At Least One Page With a Non-Scrolling Ad Frame to a Browser"

The term "transmitting at least one page with a non-scrolling ad frame to a browser" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "transmitting at least one page with a non-scrolling ad frame to a browser" should be given its plain and ordinary meaning and must be construed to mean "transmitting at least one page with a non-scrolling ad frame to a browser." (KlausTech's Opening Brief at 10.) Defendant, on the other hand, argues that the term must be construed to mean "transmitting to a browser at least one page displayed outside the non-scrolling ad frame and that retrieves a non-scrolling ad frame from the central controller." (*Id.*)

The key dispute between the parties is the proposed addition by Defendant of the identity and function of the page being transmitted as "displayed outside the non-scrolling ad frame" (i.e., that it is not the ad frame content) and the page retrieves a non-scrolling ad frame from the central controller.

(1) Defendant contends that without the limitation that the page retrieves an ad frame from the central controller, Claim 22 would not withstand scrutiny and further contends that KlausTech has argued that "the patent teaches and claims the browser receiving the non-scrolling frame from the central controller, instead of having the frame included in a website that would create search engine indexing problems." (*See* Response re Motion for Judgment on the Pleadings, Docket no. 136 at 14:24-26.) Although the patent may teach a certain mechanism to address an existing problem, does KlausTech's argument require the claim term to be so defined?

(2) Would Defendant's proposed construction invalidate claim 9 which claims a page "with code for installing a non-scrolling ad frame to a browser"?

4

(3) There is no indication in the patent that the term means it (the page) independently retrieves a non-scrolling ad frame from the central controller. However, both parties seems to agree that the page and the ad frame are independent of each other (and derive their content from independent sources). Is there a way to invoke this agreement in the proposed construction?

The Court **tentatively** adopts the following construction: "separately transmitting at least one page with an independent non-scrolling ad frame to a browser."

### D. "Individual Timer"

The term "individual timer" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "individual timer" should be given its plain and ordinary meaning and must be construed to mean "the timer that corresponds to each ad." (KlausTech's Opening Brief at 12.) Defendant, on the other hand, argues that the term must be construed to mean "a timer specific to the ad content, set by the advertiser, and that sets a guaranteed minimum interval of display in the screen of the browser." (*Id.*)

The key dispute between the parties is the importation of the advertiser as the one setting the timer, and the idea that the timer sets a guaranteed minimum interval of display. The parties appear to agree that the timer must correspond to set the display time specifically to each ad.

The patent explicitly sets out that "it is *possible* to give the advertiser direct control of ad content and ad duration used with this system." ('651 Patent at 5:65-67 (emphasis added).) But an allusion to one possible implementation does not allow the Court to import the limitation as a required element into the definition of the term. In addition, the preamble of Claim 20 alludes to aim to achieve "ad display with guaranteed minimum timed intervals" but not clear that preamble can limit the definition of a term. *See Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) ("[A] preamble is not limiting 'where a patentee defines a structurally

5

1 complete invention in the claim body and uses the preamble only to state a purpose of intended
2 use for the invention.").

3 The Court **tentatively** adopts the following construction: "an individual timer specific
4 to set the ad display."

### E. "Central Controller"

The term "central controller" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "central controller" should be given its plain and ordinary meaning and must be construed to mean "typically a computer or collection of computers." (KlausTech's Opening Brief at 14.) Defendant, on the other hand, argues that the term must be construed as a means plus function term governed by 35 U.S.C. section 112 paragraph 6, indicating that the function should be found to be: "interrogating for browser identity and maintaining records associated with the browser identity indicating ad identity displayed, and timer timeout." And the corresponding structure Defendant advances is: "system controller S as described by the '651 Patent Fig. 1, 4:23-5:6." (*Id.*)

In the alternative, Defendant proffers an alternate construction of the term "central controller" to mean "a device or collection of devices having a database to provide site accounting used to compensate advertisers for the total time of ad display to a particular browser and that directs non-scrolling ad frame set up in the browser; generates, dispenses and interrogates for unique browser identifiers; maintains records associated with the unique browser identifiers indicating ads displayed and ads available for display; and dispatches to inquiring browsers ad content." (*Id.*)

The first key dispute between the parties is whether Section 112, paragraph 6 governs where the term "fails to (1) recite sufficiently definite structure *or else* (2) recites function without reciting sufficient structure for performing that function." *Williamson v. Citrix Online*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citation omitted). KlausTech's contention that the "central controller" is *typically* a computer or collection of computers may indicate that the term

does not connote any specific structure. Defendant also proffers an alternative construction, but Defendant's proposal selects statements from the specification and reads them into the claims.

KlausTech contends that the term "central controller" should not be considered a means-plus-function term lacking the word "means." However, merely because a terms does not include the word "means" does not automatically prevent the term from being construed as means-plus-function element. *See, e.g., Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 431 (Fed. Cir. 1996). "In making the assessment of whether the limitation in question is means-plus-function term subject to the strictures of § 112, para. 6, our cases have emphasized that the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348. If a term lacks the word "means," the presumption can be overcome and section 112, paragraph 6 will apply if the challenger demonstrates that the claim term fails "to recite [] sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." *Id.* (citing *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Here, the construction proffered by KlausTech does not advance the jury's understanding of this very vague term.

Construction of a means-plus-function claim involves a two-step process. *Medical Instrumentation & Diagnostics Corp. v. Elektra AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003). In the first step, the Court must identify the particular claimed function. *Id.* In the second step, the Court looks to the specification and identifies the structure that corresponds to that function. *Id.* A structure is a "corresponding structure" only if that element is necessary to perform the function recited in the claim and is clearly linked to that function by the disclosure in the specification. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001). The patentee's "duty to clearly link or associate structure to the claimed function" represents the fair exchange for the convenience of employing means-plus-function claim limitations. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir. 2001).

Does Defendant pick and choose which functions the central controller performs? Does defining the term "central controller" to mean a computer or collection of computers help advance the jury's understanding? What functions can the parties agree to?

The Court **tentatively** adopts the following construction: "A computer or collection of computers [with certain functions]."

### F.     "Interrogating"

The term "interrogating" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "interrogating" should be given its plain and ordinary meaning and must be construed to mean "simply checking for a condition/status or for the existence of specific information." (KlausTech's Opening Brief at 17.) Defendant, on the other hand, argues that the term must be construed to mean "requesting information to obtain an answer." (*Id.*)

The parties appear to agree that the term means "requesting"; the key dispute between the parties, which appears fairly narrow, is whether the construction should include the provision that the component is requesting information "to obtain an answer."

The Court **tentatively** adopts the following construction: "requesting information."

### G.     "Timer Timeout Report"

The term "timer timeout report" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "timer timeout report" should be given its plain and ordinary meaning to be "the report containing timer timeout information" or alternatively, to mean "reporting from the browser to the central controller of the timer timeout of the ad content." (KlausTech's Opening Brief at 19.) Defendant, on the other hand, argues that the term must be construed to mean "a report or record of time of display that is recorded at the central controller and records the timeout of the ad content that was displayed in the screen of the browser for a guaranteed minimum time interval." (*Id.*)

8

The key disputes between the parties are (1) whether the term is properly construed to indicate it is "recorded at the central controller" and (2) whether the term includes the time of display. Defendant also seeks to add the limitation that the "ad content that was displayed in the screen of the browser for a guaranteed minimum interval."

(1) Does Defendant intend the term "time of display" to mean length of time an ad is displayed (as opposed to the time of day an ad is displayed)?

(2) How does KlausTech's citation to another, preceding claim element help to clarify the construction of this term for the jury?

(3) On what basis can the Court adopt the construction limitation offered by Defendant that the report, by definition, must contain the provision about ad content being "displayed in the screen of the browser for guaranteed minimum interval"?

(4) Is there a dispute that the report is recorded at the central controller?

The Court **tentatively** adopts the following construction: "a report or record of the length of time an ad is displayed that is recorded at the central controller."

**H.     Browser Identity.**

Although KlausTech did not raise any arguments in their opening claim construction brief on the meaning of this term, KlausTech preserved their dispute by briefing contesting the construction in the parties' joint claim construction and prehearing statement. (*See* Statement at 6-7.)

The term "browser identity" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "browser identity" should be given its plain and ordinary meaning. (*Id*.) Defendant, on the other hand, argues that the term must be construed to mean "a unique identifier for the browser." (*Id.* at 6.)

The key dispute between the parties is whether the browser identity must be unique. However, in order for the browser identity to mean something that can be identifiable, must such an identity be unique?

9

The Court **tentatively** adopts the following construction: "a unique identifier for the browser."

### I. Non-Scrolling Ad Display.

Again, although KlausTech did not raise any arguments in their opening claim construction brief on the meaning of this term, KlausTech preserved their dispute by briefing contesting the construction in the parties' joint claim construction and prehearing statement. (*See* Statement at 7-8.)

The term "non-scrolling ad display" appears in Claims 20, 21, 23, 24, 25, 26, 28, and 29 of the '651 Patent.

KlausTech argues that the term "non-scrolling ad display" should be given its plain and ordinary meaning. (*Id*. at 8) Defendant, on the other hand, argues that the term must be construed to mean "a graphical display in the screen of the browser of ad content within a non-scrolling ad frame." (*Id.*)

In its reply, KlausTech states that it does not dispute Defendant's proffered construction.

Accordingly, the Court adopts the following construction: ""a graphical display in the screen of the browser of ad content within a non-scrolling ad frame."

**IT IS SO ORDERED.**

Dated: April 25, 2016

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE