UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLAUSTECH, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE, INC.,<br><br>　　　　Defendant. | Case No. 10-cv-05899-JSW  (DMR)<br><br>**ORDER DENYING PLAINTIFF KLAUSTECH, INC.'S MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS AND TO COMPEL RELATED DISCOVERY**<br><br>Re: Dkt. No. 225 |

Plaintiff KlausTech, Inc. ("KlausTech") moves to amend its infringement contentions to include information that it learned in Rule 30(b)(6) depositions of Defendant Google, Inc. ("Google"). [Docket No. 225]. KlausTech also moves to compel production of source code and documents related to the proposed amendments. Google opposes. [Docket No. 231]. The Honorable Jeffrey S. White referred this matter to the undersigned for resolution. [Docket Nos. 227, 228]. The court held a hearing on October 12, 2017. Having considered the parties' briefing and oral argument, KlausTech's motion is **DENIED**.

**I.　BACKGROUND**

On February 17, 2010, KlausTech filed a patent infringement suit in the Eastern District of Texas, alleging that Google's AdMob system infringed KlausTech's Patent No. 6,128,651 ("'651 Patent").[1] Compl. [Docket No. 1]. The '651 Patent describes an internet advertising system that enables a website to display a non-scrolling ad at guaranteed minimum time intervals. '651 Patent [Docket No. 1-1]. The accused AdMob system is an advertising platform that enables mobile application developers to provide ads in their mobile applications. In order to run the AdMob

---

[1] KlausTech originally named AdMob, Inc. as the defendant in this case. Google later acquired AdMob. The parties stipulated to dismiss AdMob, and to substitute Google as the defendant. Joint Stipulation and Order [Docket No. 167].

system, the mobile application developer must install the AdMob software development kit ("SDK"). Once the AdMob SDK is loaded in an application, the software sends an AdRequest to Google's servers when the user opens the mobile application on an Android or iPhone. Google's servers, in turn, respond to the AdRequest with an AdResponse. The AdResponse includes an ad, which is then displayed on the user's device. The AdMob system assigns the user's device a unique identifier that is generally referred to as the "Advertising ID."

On November 30, 2010, upon Google's motion, the Eastern District of Texas transferred the action to the Northern District of California where it was assigned to Judge White. Memo. Op. and Order [Docket No. 50].

On February 22, 2011, Judge White stayed the action pending reexamination of the '651 Patent. Order Granting Mot. to Stay [Docket No. 77]. The stay was lifted three years later, on June 24, 2014. Order Granting Mot. to Lift Stay [Docket No. 94]. KlausTech's first set of counsel then withdrew from the action, and KlausTech substituted in its second set of counsel shortly thereafter. *See* Mot. to Withdraw [Docket No. 104]; Order [Docket No. 106].

On December 12, 2014, Judge White held a case management conference during which he ordered a three-part process for amending the infringement contentions. KlausTech was ordered to serve its Amended Infringement Contentions by January 13, 2015. Google would then produce all technical discovery by February 13, 2015, after which KlausTech would serve its Final Infringement Contentions by March 13, 2015. 12/12/14 Minute Order [Docket No. 113].

KlausTech served its Amended Infringement Contentions on January 13, 2015. On January 21, 2015, KlausTech served Google with a Rule 30(b)(6) deposition notice. Aside from this deposition notice, KlausTech did not serve any other discovery in 2015.

Between February and March 2015, Google produced source code for the accused AdMob system. KlausTech reviewed the code, and served its Final Infringement Contentions on March 30, 2015. On June 16, 2015, KlausTech served its First Amended Final Infringement Contentions to address certain deficiencies identified by Google.

In December 2015, the parties initiated claim construction briefing which they completed in February 2016. *See, e.g.*, Docket Nos. 156, 157, 158, 160. On April 28, 2016, Judge White

2

held a *Markman* hearing, and issued a claim construction order on May 23, 2016. *See* 4/28/16 Minute Order [Docket No. 172]; Claim Construction Order [Docket No. 176].

On June 28, 2016, Judge White issued a scheduling order which set the close of fact discovery on December 16, 2016. *See* Order Setting Case Management Deadlines [Docket No. 185].

In August 2016, KlausTech served its first written discovery on Google, to which Google timely responded. Two months later, on October 24, 2016, by agreement and court order, KlausTech served its Second Amended Final Infringement Contentions.

On November 8, 2016, KlausTech served a Rule 30(b)(1) deposition notice for Google's technical witnesses, including Tuna Toksoz. However, on November 11, 2016, KlausTech filed an unopposed motion to stay the case pending resolution of a Covered Business Method Review ("CBMR") petition, which Google had filed with the United States Patent and Trademark Office ("USPTO").

On November 28, 2016, Judge White granted KlausTech's motion and stayed the case a second time. *See* Order Granting Mot. to Stay [Docket No. 202]. The stay was lifted approximately six months later, on May 1, 2017. *See* Order Granting Request to Lift Stay [Docket No. 213]. KlausTech substituted its third set of counsel on that same day. *Id*.

On June 2, 2017, Judge White held a case management conference during which he set the close of fact discovery on September 1, 2017, and the close of expert discovery on January 16, 2018. *See* 6/2/17 Minute Order [Docket No. 217]. The parties thereafter scheduled the previously-noticed depositions of Google's 30(b)(6) technical witnesses.

On July 25, 2017, KlausTech deposed Tuna Toksoz as Google's Rule 30(b)(6) deponent on a number of technical topics, including the AdMob SDK and related source code, the communication between an application utilizing the AbMob SDK and the Google servers, the creation and content of an AdRequest and an Ad Response, the operation of Google servers that create the content of an AdResponse, and source code related to the processing of the AdResponse. During the deposition, Toksoz testified about how the Advertising ID operates in the AdMob system, as well as the existence of an Excel spreadsheet setting forth various

1 parameters in an AdRequest. Google had produced two earlier versions of the parameters Excel

2 spreadsheet in 2015. On August 3, 2017, Google produced an updated version.

3     On August 4, 2017, KlausTech deposed Alvin Dias as Google's 30(b)(6) deponent on

4 other technical topics, including Google's pre-acquisition development of the AdMob SDK.

5 During the deposition, KlausTech's counsel asked Dias questions about the parameters on the

6 Excel spreadsheet that had been produced on August 3, 2017, in addition to other parameters.

7 Dias testified that certain parameters are logged by Google's servers.

8     On August 8, 2017, four days after Dias's deposition, KlausTech notified Google of its

9 intent to amend its infringement contentions. On August 18, 2017, KlausTech provided Google

10 with a draft of its proposed Third Amended Final Infringement Contentions relating to the AdMob

11 Android claim chart, and represented that proposed amendments relating to the IOS and Windows

12 claim charts would mirror those changes. Despite meet and confer efforts, the parties were unable

13 to resolve their disputes regarding the proposed amendments.

14     On August 28, 2017, KlausTech filed the instant motion to amend. The parties jointly

15 requested that the court seal the hearing on this motion due to the anticipated disclosure of

16 confidential and proprietary information about Google's AdMob source code. *See* Joint

17 Stipulation to Seal Hearing [Docket No. 236].

18     On October 12, 2017, the court held a hearing. Balancing the public's right to access and

19 Google's interest in the proprietary nature of its technology, the court sealed only the portion of

20 the hearing that addressed the technical aspects of the AdMob system. The remainder of the

21 hearing was not sealed.

22 **II. LEGAL STANDARD**

23     The local rules of the Northern District of California require parties to define their theories

24 of patent infringement and invalidity early on in the course of litigation. *O2 Micro Int'l Ltd. v.*

25 *Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). "In contrast to the more liberal

26 policy for amending pleadings, the philosophy behind amending claim charts is decidedly

27 conservative, and designed to prevent the shifting sands approach to claim construction." *Positive*

28 *Techs., Inc. v. Sony Elecs., Inc.*, No. C. 11-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28,

4

2013) (citation omitted). Thus this district's Patent Local Rules permit parties to amend their infringement and invalidity contentions "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. By requiring a showing of good cause, "Local Rule 3-6 serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case." *Open DNS, Inc. v. Select Notifications Media, LLC*, No. C-11-5101 EJD (HRL), 2013 WL 2422623, at *2 (N.D. Cal. June 3, 2013) (citing *O2 Micro*, 467 F.3d at 1366).

The Patent Local Rules specifically acknowledge the possibility that a party may need to supplement infringement contentions with information found during discovery. *See* Patent L.R. 3-6 ("Non-exhaustive examples of circumstances that may . . . support a finding of good cause include: (a) a claim construction order by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the [a]ccused [i]nstrumentality which was not discovered, despite diligent efforts, before the service of the [i]nfringement [c]ontentions."). The moving party bears the burden of establishing diligence. *See O2 Micro*, 467 F.3d at 1366.

"[T]he diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc.*, 2013 WL 322556, at *2. "The good cause requirement does not require perfect diligence. Although hindsight is often '20/20,' . . . new information learned in discovery can lead a party to understandably reevaluate evidence found earlier." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014) (citation omitted); *see also Positive Techs.*, 2013 WL 322556, at *3 (diligence standard does not require defendant to "identify all . . . references that may become relevant to all possible claim constructions").

The court may deny a motion for leave to amend infringements contentions if it would cause "undue prejudice to the non-moving party." Patent L.R. 3-6. Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," *see O2 Micro*, 467 F.3d at 1368, although a court in its discretion may elect to do so, *see*, *e.g.*, *Dynetix Design*

5

*Solutions Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2012 WL 6019898, at *1 (N.D. Cal. Dec. 3, 2012). *See Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-3643 CW (DMR), 2016 WL 1570163, at *1–2 (N.D. Cal. Apr. 19, 2016).

### III. DISCUSSION

KlausTech seeks leave to amend its infringement contentions pursuant to Patent L.R. 3-6(a). KlausTech argues that good cause for amendment exists because despite its diligent efforts, it could not have discovered certain nonpublic information about the operation of the accused AdMob system until it discovered key facts in the July 2017 and August 2017 depositions of Google's 30(b)(6) technical witnesses. KlausTech contends that allowing the amendments will not prejudice Google.

#### A. Diligence

To establish good cause, KlausTech must first demonstrate that it acted diligently in discovering the basis for its proposed amendments, as well as in seeking leave to amend. *See Positive Techs., Inc.*, 2013 WL 322556, at *2.

KlausTech argues that it acted diligently in discovering the basis for its proposed amendments by promptly reviewing the voluminous source code that Google produced in February and March 2015. Despite its diligent review, KlausTech did not understand key aspects of the AdMob system's functionality until the July and August 2017 30(b)(6) depositions, in part because Google failed to produce certain information and also took steps to obfuscate critical operational aspects of AdMob. KlausTech contends that prior to the depositions, it was not aware of the specific role and function of the Advertising ID in the AdMob system, as well as the existence, function and logging of certain parameters in the AdRequest. KlausTech asserts that upon learning this information, it immediately notified Google of its intent to amend its infringement contentions, served its Third Amended Final Infringement Contentions, and moved for leave to amend, all within 30 days of the depositions.

Google disagrees. According to Google, KlausTech was not diligent because Google produced source code and documents back in 2015 that contained the key information underlying the proposed amendments, or was sufficient to lead to its discovery. Google argues that it did not

6

hide or purposefully withhold information, and that it actively engaged with KlausTech through numerous meet and confer sessions regarding its 2015 production in order to meet its discovery obligations in good faith. Google contends that KlausTech failed to demonstrate diligence because it waited until the end of discovery to depose the 30(b)(6) witnesses to verify exactly how AdMob works.

The court agrees with Google, and finds that while KlausTech acted diligently in moving to amend, it did not act diligently in discovering the basis for its proposed amendments.

KlausTech contends that Google purposefully buried or obscured information in its 2015 production, which hindered KlausTech's ability to understand how AdMob works in order to accurately set forth its infringement contentions. The court heard detailed oral argument on this point, which is contained in the sealed portion of the hearing. Having considered these arguments as well as the parties' submissions, the court concludes that Google did not actively try to hide the ball nor did it take affirmative steps to prevent KlausTech from understanding how AdMob works. Under Patent Local Rule 3-4(a), Google was obligated to produce "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart." Google did this. It disclosed source code and documents in 2015 showing how the AdMob system works, including the basic role and function of the Advertising ID, and the existence, function, and logging of certain parameters in an AdRequest. The record demonstrates that after the production, the parties regularly met and conferred about the relatively complex and voluminous source code, and Google responded to KlausTech's requests for production of additional information. Nothing in the record indicates that Google stonewalled KlausTech, or otherwise refused to work with KlausTech in good faith to meet its production obligations.

The 2015 production included sufficient information about the Advertising ID, as well as the parameters within the AdRequest and their role in the AdMob system, all of which should have prompted KlausTech to conduct further targeted discovery about precisely how these elements function in the AdMob system if KlausTech needed clarification. Moreover, the fact that

the AdMob system uses the Advertising ID is publicly known. Given the content of Google's 2015 production, there is nothing in the record to suggest that KlausTech could not have ascertained exactly how the Advertising ID and the parameters work in the AdMob system well in advance of August 2017, had it exercised reasonable diligence. *See, e.g., CyWee Grp. Ltd v. Apple Inc.*, No. 14-cv-01853-HSG (HRL), 2016 WL 7230865, at *2 (N.D. Cal. Dec. 14, 2016) (denying a patentee's motion to amend where the allegedly "new" information was in the patentee's possession for years; while the information "may have been difficult to find—obscured by language barriers and placed at a remove by geography," the court was not "persuaded that these challenges could not have been overcome by a diligent search at or before the outset of this litigation").

Although the case has been stayed twice, discovery was open for an almost two year period, from December 2014 to November 2016, prior to its reopening in May 2017. It is undisputed that KlausTech could have deposed Google's technical witnesses or conducted additional written discovery during that time. During the nearly two year period, KlausTech only conducted minimal discovery; it served one 30(b)(6) deposition notice in January 2015, one set of requests for production in August 2016, and a Rule 30(b)(1) deposition notice in November 2016. It chose not to take any of the noticed depositions until July 2017, at the very end of the discovery period. The excerpts from the 30(b)(6) depositions demonstrate that Google's deponents were forthright in answering KlausTech's counsel's questions. If, after reviewing the source code, KlausTech had any doubt about how the AdMob system functioned, it had ample opportunity to take depositions to test its assumptions. KlausTech bore the risk of building its infringement case on mistaken assumptions by waiting to go forward with depositions until the end of discovery. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 7386136, at *2 (N.D. Cal. Dec. 21, 2016) ("[A]s a general rule, mistakes or omissions are not by themselves good cause.") (citation and internal quotation marks omitted).

KlausTech explains that it was not aware of the need to depose Google's 30(b)(6) technical witnesses at any time prior to July 2017 because it relied on Google's representations that it had produced all of the relevant source code, which Google confirmed was the best source of

information regarding how AdMob works. This argument is unpersuasive. The record shows that Google determined the contents of its production based in part on what KlausTech told Google it needed in order to comprehend AdMob's functionality, and also on what it understood was required by the Local Rules. It supplemented its production based on numerous communications with KlausTech through the iterative process that is normal for this kind of case. It was incumbent on KlausTech to act with reasonable diligence to crystallize its theories of infringement early on, and to confirm that its understanding of AdMob's functionality was accurate. While KlausTech may have had strategic reasons to wait until late in discovery to depose a 30(b)(6) witness regarding the accused product, embarking on such a strategy was fraught with risk, especially under the rubric of the Patent Local Rules. The court acknowledges that KlausTech has had three changes of counsel during the course of this case, which has no doubt affected its overall litigation plan. However, a change of counsel does not alter the diligence analysis; diligence is measured according to the efforts of all counsel representing a party. *See, e.g., CyWee Grp. Ltd.*, 2016 WL 7230865, at *2 (explaining that "[c]urrent counsel's recent efforts to pick up the ball [after an attorney who left the firm] . . . do not 'cure' the earlier lack of diligence").

Courts consistently have refused to find diligence where a party delayed in taking key depositions. *See, e.g., Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (no diligence or good cause shown where the moving party waited over a year to conduct 30(b)(6) depositions; the patentee "had more than ample opportunity early in the litigation to discover the existence of these non-public documents and to ascertain whether they disclosed a potential basis for additional infringement contentions"); *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-3643 CW (DMR), 2016 WL 1570163, at *3 (N.D. Cal. Apr. 19, 2016) (no diligence or good cause shown where the moving party failed to explain why it "was reasonable to wait fifteen months after the stay was lifted, and over six months after the initial CMC, to serve a subpoena on an admittedly key third party"); *Ameranth, Inc. v. Genesis Gaming Sols., Inc.*, No. SAC 11-0189-AG (RNBx), 2015 WL 10793431, at *3 (C.D. Cal. Jan. 2, 2015) (no diligence or good cause shown where the moving party waited until August to depose 30(b)(6) witnesses, when it reviewed the source code in January, and submitted its revised infringement contentions in

June).

In conclusion, the court finds that KlausTech has not met its burden of establishing diligence.

### B. Prejudice

Because KlausTech has not met its burden of establishing diligence, the court does not reach the issue of prejudice to Google. *See O2 Micro*, 467 F.3d at 1368.

### C. Motion to Compel

As the court denies KlausTech's motion to amend, it denies as moot KlausTech's motion to compel discovery related to its proposed amendments.

## IV. CONCLUSION

In conclusion, the court denies KlausTech's motion to amend and its motion to compel.

**IT IS SO ORDERED.**

Dated: October 25, 2017



Donna M. Ryu
United States Magistrate Judge